# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT M. ARRIAGA, | 1:08-CV-01837 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MATTHEW CATE, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by plea of no contest on March 22, 2005, to one count of assault with a firearm (Cal. Penal Code § 245(a)(2)) and one count of attempting to dissuade the victim from reporting the crime (Cal. Penal Code § 136.1(b)(2)). (LD 5.[1]) On the same day, Petitioner pled no contest in a separate case to one count of voluntary manslaughter (Cal. Penal Code § 192(a)). (LD 5.) On April 20, 2005, Petitioner was sentenced in both cases to a total aggregate term of 14 years. (LD 5.)

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District. On

---
[1] "LD" refers to the documents lodged by Respondent with his answer.

January 6, 2006, the appellate court modified the judgment to increase certain fees, but affirmed the judgment in all other respects. (LD 12.)

On February 14, 2006, Petitioner filed a petition for review in the California Supreme Court. (LD 15.) On March 22, 2006, the petition was denied without prejudice to any relief Petitioner may be entitled to once the Supreme Court decided Cunningham v. California, 549 U.S. 270 (2007). (LD 16.)

Petitioner then filed a petition for writ of certiorari in the United States Supreme Court. On March 30, 2007, the Supreme Court granted the petition, vacated the judgment, and remanded the case to the appellate court for further consideration in light of Cunningham v. California, 549 U.S. 270 (2007). (LD 9.)

On June 19, 2007, the appellate court once again affirmed the judgment with the exception of the modification to the court security fees. (LD 5.) Petitioner requested rehearing in the appellate court, but the request was denied. (LD 14.)

On July 23, 2007, Petitioner filed a second petition for review in the California Supreme Court. (LD 6.) On August 22, 2007, the petition was summarily denied. (LD 7.)

Petitioner then filed a second petition for writ of certiorari in the United States Supreme Court. That petition was denied on January 14, 2008. (LD 17.)

On December 2, 2008, Petitioner filed the instant federal habeas petition. Petitioner claims the trial court violated his right to a jury trial as guaranteed by the Sixth and Fourteenth Amendments when the trial court imposed the upper term for voluntary manslaughter based on facts not found beyond a reasonable doubt by a jury, in violation of Cunningham v. California, 549 U.S. 270 (2007). On March 13, 2009, Respondent filed an answer to the petition. On May 11, 2009, Petitioner filed a traverse.

## FACTUAL BACKGROUND[2]

The parties stipulated a factual basis for the plea existed in police reports. The facts underlying the conviction for assault with a firearm and attempting to dissuade a witness as set forth

---

[2] The facts are taken from the statement of facts set forth in Petitioner's brief on appeal. (LD 1:5-6.)

in the probation officer's report were as follows:

On May 20, 2004, Angela L. reported to police she went to Petitioner's residence to use his computer to prepare a resume. While she was working on the resume, she and Petitioner argued and she attempted to leave. Petitioner pulled her hair and forced her to the couch. Angela's shirt was torn open, and she scratched Petitioner. Petitioner pulled Angela by her hair to his bedroom where he forced her onto a bed. As Angela tried to push Petitioner off of her, he obtained a handgun from the headboard area. Petitioner pointed the gun to Angela's head, readied it to fire, and demanded she stop resisting. Petitioner forcibly raped Angela for a short time and stopped when she began to cry. Petitioner apologized although he became angry when Angela tried to persuade him to let her leave. Petitioner resumed forcible sexual intercourse with Angela and then asked her to stay until he fell asleep.

Although Petitioner apparently did fall asleep, Angela did not leave and instead took the gun from Petitioner's hand and "test-fired" the gun to ascertain whether it contained ammunition. When the gun discharged and fired a hole in an entertainment center, Petitioner awoke and became angry. Petitioner resumed forcible sexual intercourse with Angela. When Angela began to bang the headboard against the wall and threaten to report the incident, Petitioner ceased the sexual assault and threatened to kill Angela, her family and himself. Angela was forced to agree to not report the incident in order to persuade Petitioner to permit her to leave his residence. On May 29, 2004, while Petitioner was detained in the Lerdo Pretrial Facility upon being arrested in connection with Angela L.'s report, Angela reported she had received two threatening telephone calls from Petitioner.

On July 25, 2004, Robert Vallejo was assaulted and killed in housing unit 4 of the D-Pod of the Lerdo Pretrial Facility. An unidentified inmate at the Lerdo Pretrial Facility reported the assault was committed by approximately ten Hispanic gang members described as "Southsiders." First, three inmates followed Mr. Vallejo to his cell and beat him in concert. Then, other gang members, including Petitioner, struck Mr. Vallejo numerous times in the head and upper body area with closed fists as he lay on the floor of his cell. Mr. Vallejo died of the injuries sustained in the beatings.

///
///

# DISCUSSION

## I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III. Review of Petition**

Petitioner claims the trial court violated his constitutional rights in sentencing him to the upper term on his conviction for manslaughter by relying on aggravating factors not found by a jury beyond a reasonable doubt.

This claim was raised and rejected on direct appeal in the California Court of Appeals. It was then raised before the United States Supreme Court, where judgment was vacated and the case remanded for consideration in light of Cunningham v. California, 549 U.S. 270 (2007). On remand, the appellate court denied the claim in a reasoned opinion. (LD 5.) It was then presented in a petition for review to the California Supreme Court, and the petition was summarily denied. (LD 7.) The California Supreme Court, by its "silent order" denying review of the appellate court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The appellate court analyzed and rejected the claim as follows:

> Arriaga contends the court violated *Blakely* and *Cunningham* by imposing the upper term of 11 years for the count of voluntary manslaughter based on facts not found by the jury or admitted by him. He is incorrect.
>
> Under the terms of the plea agreements in both trial court cases, Arriaga could have been sentenced to a total maximum term of imprisonment of 17 years. The trial court imposed a total sentence of 14 years, well within the maximum under the plea agreement. Arriaga agreed to imposition of a maximum 11-year prison sentence for the voluntary manslaughter count as a condition of the plea agreement; he was sentenced to an 11-year term for that conviction.
>
> Arriaga's challenge to the 11-year sentence for voluntary manslaughter amounts to a collateral attack on the validity of the plea bargain. This is foreclosed absent compliance with section 1237.5. (*People v. Panizzon* (1996) 13 Cal.4th 68, 78-79; *People v. Stewart* (2001) 89 Cal.App.4th 1209, 1220 (*Stewart*).) Arriaga must obtain a certificate of probable cause before challenging the plea, even though the plea did not specify a particular sentence. (*Stewart,* at pp. 1216-1218.) *Stewart* reasoned that a challenge to a negotiated sentence, even where the negotiation is only for a maximum possible sentence, as in Arriaga's case, is an effort to unilaterally improve the terms of the plea bargain. Thus, it is an attack on the validity of the plea bargain and a certificate of probable cause is required. (*Ibid.*) No certificate of probable cause appears in the record, and Arriaga is precluded from challenging the sentence on appeal.

| | |
|---|---|
| 1 | Furthermore, by entering into the plea agreement, Arriaga effectively stipulated that there was a factual basis for the imposition of the maximum term that could be imposed within the terms of the plea agreement and that imposition of the lid was lawful. (*People v. Shelton* (2006) 37 Cal.4th 759, 768.) Under *Blakely,* the statutory maximum includes the maximum sentence a judge may impose based on facts admitted by the defendant. (*Blakely, supra,* 542 U.S. at p. 303.) *Cunningham* held that in accord with *Blakely,* the upper term could be imposed if the factual basis was found by the jury or stipulated to by the defendant. (*Cunningham, supra,* 549 U.S. at p. ---- [127 S.Ct. at p. 868].) |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | In *People v. Bobbit* (2006) 138 Cal.App.4th 445, the defendant entered into a plea agreement with a sentencing lid. The trial court imposed the maximum term that could be imposed under the plea agreement. (*Id.* at p. 447.) After first noting that the issue was not cognizable on appeal because the defendant failed to obtain a certificate of probable cause, the appellate court noted that imposition of the upper term pursuant to a plea agreement was not precluded, citing *People v. Shelton, supra,* 37 Cal.4th 759. As the California Supreme Court stated in *Shelton*: |
| 7 | |
| 8 | |
| 9 | |
| 10 | "[T]he specification of a maximum sentence or lid in a plea agreement normally implies a mutual understanding of the defendant and the prosecutor that the specified maximum term is one that the trial court may lawfully impose and also a mutual understanding that, absent the agreement for the lid, the trial court might lawfully impose an even longer term." (*Id.* at p. 768.) |
| 11 | |
| 12 | |
| 13 | In conclusion, Arriaga is precluded from challenging his sentence on appeal because he failed to obtain a certificate of probable cause. Alternatively, the sentence imposed is within the maximum specified under the plea agreement and was stipulated to by Arriaga. The sentence does not violate *Blakely* or *Cunningham.* |
| 14 | |
| 15 | (LD 5:6-7.) |
| 16 | The state court correctly rejected Petitioner's claim that his upper term sentence violated |
| 17 | <u>Blakely</u> and <u>Cunningham</u>. Petitioner entered a plea of no contest to the charge of voluntary |
| 18 | manslaughter after being informed and agreeing that he would likely be sentenced to the maximum |
| 19 | term. The trial court was very clear in setting forth the sentence Petitioner was facing: |
| 20 | THE COURT: You are going to get 14 years is the bottom line. You understand that? |
| 21 | THE DEFENDANT: Yeah. Well, it's up to the judge, right? |
| 22 | THE COURT: It is. But if you think you are going to get less, you need to tell me now because I think you are going to probably - - I might even be the judge. And I haven't looked at all the facts. But given the little bit I know about the case, which is very little, I don't know anything about the second case, you are very likely going to get the max. I think that your - - |
| 23 | |
| 24 | |
| 25 | [DEFENSE COUNSEL]: That's fine. He is taking the plea with the idea he will get the maximum sentence. Legally he could get a lesser sentence. |
| 26 | THE COURT: Absolutely. Sometimes defendants plead guilty knowing that – I tell them what the maximum is, thinking the whole time but I'm going to get the low term. If you are thinking you are going to get the low term, let's stop it now and get out. You have might [sic]. I don't know. But I don't want you coming back next month saying, Bush, you told me I was going to get the low term, I want to withdraw my plea, because I'm not going to let |
| 27 | |
| 28 | |

you.

THE DEFENDANT: Yeah.

(CT at 43.[3])

Furthermore, the Supreme Court stated in <u>Cunningham</u>: "As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." <u>Cunningham v. California</u>, 549 U.S. 270, 274-75 (2007). In other words, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004) (emphasis in original). In this case, Petitioner entered a plea agreement and stipulated that a factual basis existed for imposition of the maximum term. Therefore, he was not sentenced above the statutory maximum. In addition, he was informed and understood he faced a maximum aggregate sentence of 17 years for the various charges. He received a sentence of 14 years, which is well within the statutory maximum. In light of the plea agreement and the sentence imposed, it is clear the sentence did not violate <u>Blakely</u> or <u>Cunningham</u>.

Petitioner has failed to show that the state court's denial of his claim was either contrary to or an unreasonable application of clearly established Federal law. <u>See</u> 28 U.S.C. § 2254(d). Therefore, the claim should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

---

[3] "CT" refers to the Clerk's Transcript on Appeal.

Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 29, 2009**                    **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE